**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:11-cv-00019-JRG |
| Plaintiff, | |
| v. | |
| ANALOG DEVICES, INC., ET AL., | **[JURY TRIAL DEMANDED]** |
| Defendants. | |
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:12-cv-152-JRG |
| Plaintiff, | |
| v. | |
| ATMEL CORPORATION, | **[JURY TRIAL DEMANDED]** |
| Defendant. | |
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:12-cv-153-JRG |
| Plaintiff, | |
| v. | |
| CONEXANT SYSTEMS, INC., | **[JURY TRIAL DEMANDED]** |
| Defendant. | |
| ADVANCED PROCESSOR TECHNOLOGIES LLC, | Case No. 2:12-cv-154-JRG |
| Plaintiff, | |
| v. | |
| CREATIVE TECHNOLOGY LTD., ZIILABS PTE LTD., AND CREATIVE LABS, INC. | **[JURY TRIAL DEMANDED]** |
| Defendants. | |

| | |
|---|---|
| ADVANCED PROCESSOR TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>MARVELL SEMICONDUCTOR, INC.,<br><br>Defendant. | Case No. 2:12-cv-155-JRG<br><br><br>**[JURY TRIAL DEMANDED]** |
| ADVANCED PROCESSOR TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>MINDSPEED TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 2:12-cv-156-JRG<br><br><br>**[JURY TRIAL DEMANDED]** |
| ADVANCED PROCESSOR TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No. 2:12-cv-157-JRG<br><br><br>**[JURY TRIAL DEMANDED]** |
| ADVANCED PROCESSOR TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>XILINX, INC.,<br><br>Defendant. | Case No. 2:12-cv-158-JRG<br><br><br>**[JURY TRIAL DEMANDED]** |

## <u>ARM LTD. AND ARM, INC.'S UNOPPOSED MOTION TO INTERVENE</u>

Pursuant to Federal Rule of Civil Procedure 24, ARM Ltd. and ARM, Inc. (collectively, "ARM") hereby move to intervene in the above-captioned cases as of right under Fed. R. Civ. P. 24(a)(2), or alternatively, with the permission of the Court under Fed. R. Civ. P. 24(b)(1)(B).

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND .................................................................................... 2

    A.   ARM's Processor Designs Are Utilized in Most Electronic Devices Today. ............... 2

    B.   APT Accuses Functionality Within the ARM Processor Cores. .................................. 3

    C.   These Cases Are at an Extremely Early Stage of Litigation........................................... 4

III. ARGUMENT ............................................................................................................. 4

    A.   ARM Should Be Allowed to Intervene As of Right Pursuant to Fed. R. Civ. P.
        24(a)(2). ....................................................................................................................... 4

        1.   ARM's Motion for Intervention is Timely. ............................................................ 5

        2.   ARM Has An Interest In The Subject Matter Of This Proceeding............................ 6

        3.   The Court's Decision In This Case May Impair Or Impede ARM's Ability To
            Protect Its Interests................................................................................................. 7

        4.   The Other Defendants Cannot Adequately Protect ARM's Interests. ...................... 8

    B.   In The Alternative, ARM Satisfies All Of The Requirements For Permissive
        Intervention Under Fed. R. Civ. P. 24(b)................................................................... 10

    C.   ARM's Intervention Is Precisely The Action That The Federal Circuit Recommends
        Under The Present Circumstances. ............................................................................ 11

IV.  CONCLUSION....................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bush v. Viterna,* 740 F.2d 350 (5th Cir. 1984).............................................................................. 8

*Ceres Gulf v. Cooper*, 957 F.2d 1199 (5th Cir. 1992) ................................................................... 6

*Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53 (1935)........................................ 6

*Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir. 1977)................................................... 8

*Diaz v. S. Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970) ............................................................. 5

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ............................................................. 5

*Effjohn Intl. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552 (5th Cir. 2003) ................ 11

*Heaton v. Monogram Credit Card Bank*, 297 F.3d 416 (5th Cir. 2002) ................................ 5, 8, 9

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, 2005 U.S. Dist. LEXIS 22933 (D. Del. 2005)

.................................................................................................................................................. 7

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333 (Fed. Cir. 2001)... 11

*Israel Bio-Engineering Project v. Amgen, Inc.*, 401 F.3d 1299 (Fed. Cir. 2005)........................... 9

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185 (5th Cir.

1989) ...................................................................................................................................... 10

*LG Elecs., Inc. v. Q-Lity Computer, Inc. v. Asustek Computer, Inc.*, 211 F.R.D. 360 (N.D. Cal.

2002) ................................................................................................................................... 7, 8

*Nat'l Farm Lines v. ICC*, 564 F.2d 381 (10th Cir. 1977) ........................................................... 10

*Reid v. GM Corp.,* 240 F.R.D. 257 (E.D. Tex. 2006) ................................................................. 10

*Sierra Club v. Espy,* 18 F.3d 1202 (5th Cir. 1994) .......................................................... 5, 6, 8, 9

*Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996)…………………………………………7, 9

*Tegic Commc'ns Corp. v. Bd. of Regents of the Univ. of Tex. Sys.*, 458 F.3d 1335 (Fed. Cir.

2006) ...................................................................................................................................... 6

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) ................................................................. 8

**Rules**

Fed. R. Civ. P. 24(a)(2) ................................................................................................................. 4

**Treatises**

7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

    PROCEDURE § 1609 (3d ed. 2001) ........................................................................................ 12

## I.     __INTRODUCTION__

ARM seeks to intervene here because its interests are at the core of these disputes.[1] Indeed, Plaintiff Advanced Processor Technologies LLC ("APT") has accused numerous ARM customers of infringing claims of four patents-in-suit.  In asserting infringement against ARM's customers, APT has relied almost exclusively on technology supplied by ARM in its Complaint and Infringement Contentions.  By seeking a declaration that ARM technology infringes the patents-in-suit and a permanent injunction, APT's lawsuit requests relief that would directly impede ARM's legal rights, capital investments, and business plans as they relate to ARM's ability to sell the accused products to its customers.  This is the precise situation for which intervention was created.

As explained below, ARM is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a) because it "claims an interest relating to the property or transaction that is the subject of the action" and is "so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  In the alternative, this Court should grant ARM permissive intervention pursuant to Fed. R. Civ. P. 24(b). Furthermore, ARM's involvement in this litigation is a course of conduct recommended by the Federal Circuit under the present circumstances.

Additionally, ARM's involvement does not expand this case in any fashion.  ARM intends to comply with the Court's docket and discovery orders and the agreements reached between the parties regarding discovery so that no existing party will be prejudiced or delayed by ARM's defense of its rights.  ARM has consulted with the existing parties.  Neither APT nor any

---

[1] ARM is simultaneously filing this same motion in Case Nos. 2:12-cv-152, 2:12-cv-153, 2:12-cv-154, 2:12-cv-155, 2:12-cv-156, 2:12-cv-157, and 2:12-cv-158.  These cases involve the same ARM processor core technology that is at issue in the 2:11:cv-19 litigation.

of the Defendants oppose ARM's intervention.

Finally, for the convenience of the parties and witnesses, ARM is concurrently, or shortly after the filing of this motion, filing a motion to transfer this case the Northern District of California.  ARM has its Northern American headquarters in the Northern District.  Defendants are located in our near the Northern District.  Acacia Research Corporation – the parent corporation of APT – is headquartered in California.  This District has no such ties to this case or the parties.  Accordingly, this case meets all of the criteria from the Federal Circuit and Fifth Circuit for transfer.

## II.   FACTUAL BACKGROUND

### A.   ARM's Processor Designs Are Utilized in Most Electronic Devices Today.

ARM is the leading designer of processors used in cellular telephones, handheld computers and numerous other electronic products requiring low power consumption and small size.  ARM processor designs are incorporated into the integrated circuits of products sold all over the world—including those of the Defendants.

ARM designs processors that can be embedded into and form a component of larger integrated circuits and licenses these processor designs to other companies that then make and sell larger integrated circuits that might be commonly referred to as processor or programmable "chips."  The processor design supplied by ARM is commonly referred to as the ARM "core" or ARM "processor core."  These cores are frequently known by the generation or "family" of the design.  For example, the ARM9 "family" would include the ARM926EJ-S core.  The newer ARM11 "family" would include cores such as the ARM1136EJ-S core.

To help maintain its competitive position, ARM invests heavily in research and development—over $100 million in the last year alone.  Indeed, ARM's North American headquarters is located in San Jose, California, which employs over 300 scientists, engineers,

and other technologically skilled personnel in addition to numerous sales, marketing and support personnel.

Since ARM's business depends upon the utilization of its processor cores by its customers, ARM is acutely sensitive to accusations of patent infringement.  ARM's licensees/customers are justifiably concerned with allegations that their future products might infringe a patent.  Thus, it is important for ARM to eliminate promptly any cloud of uncertainty created by allegations of infringement.

### B.      APT Accuses Functionality Within the ARM Processor Cores.

On January 26, 2011, APT filed the present Complaints against Defendants Conexant Systems, Inc. ("Conexant"), Marvell Semiconductor, Inc. ("Marvell"), Mindspeed Technologies, Inc. ("Mindspeed"), Zoran Corporation ("Zoran"), Creative Labs Inc. ("Creative"), Atmel Corporation ("Atmel"), Nvidia Corporation ("Nvidia"), and Xilinx Inc. ("Xilinx") (collectively, "Defendants").[2]  Conexant, Mindspeed, Creative, Xilinx, Atmel, Nvidia, and Zoran are ARM customers who sell chips incorporating ARM processor cores to end product manufacturers.

Notably, APT's assertions in the Complaints are specifically targeted at ARM products:

> 40.  For example, without limitation, each of the Defendants makes, uses, sells, imports, and/or offers for sale one or more of the following processors (and/or products incorporating the same): ARM9 series processors with MMUs (*e.g.*, ARM920T, ARM922T, ARM926EJ-S); ARM11 series processors with MMUs (*e.g.*, ARM1136JF-S, ARM1136J-S, ARM1176JZ-S, ARM1176JZF-S, ARM11 MPCore); ARM Cortex series processors with MMUs (e.g., Cortex-A9); and Sheeva™ processors.

Case No. 2:11-cv-19, Am. Compl. ¶ 40.

On December 16, 2011, APT served Defendants with infringement contentions and

---

[2] APT originally accused Analog Devices, Inc., Cirrus Logic, Inc., Digi International, Inc., Micrel, Inc., and Netronome Systems, Inc., but those parties have since been dismissed from the case.  APT also filed substantially similar Complaints in the companion cases listed in the case caption.

specifically identified ARM processor cores as *the* "accused instrumentalities."  Indeed, APT

identified nothing unique to Defendants' products outside of ARM technology.  For these

accused products, there can be no doubt that ARM is the real party-in-interest against whom

APT is seeking an infringement determination.

### C.    These Cases Are at an Extremely Early Stage of Litigation.

These cases are indisputably at an extremely early stage of litigation.  No substantive

hearings have been heard or scheduled, no depositions or *Markman* briefing have occurred, and

trial is still approximately year away.  Moreover, ARM is prepared to promptly produce

technical manuals and make its source code available for inspection.

### III.   ARGUMENT

### A.    ARM Should Be Allowed to Intervene As of Right Pursuant to Fed. R. Civ. P. 24(a)(2).

Because APT's claims for relief threaten both ARM's specific products and its

substantial capital investment and business plans in the provision of processor cores to other

customers, and because ARM technology is specifically targeted by APT's Infringement

Contentions, ARM submits that it is entitled to intervene as a matter of right.[3]

The Fifth Circuit has adopted a four-part test to determine if intervention as of right is

warranted:  "(1) the applicant must file a timely application; (2) the applicant must claim an

interest in the subject matter of the action; (3) the applicant must show that disposition of the

action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's

interest must not be adequately represented by existing parties to the litigation."  *Heaton v.*

---

[3]    *See* Fed. R. Civ. P. 24(a)(2) ("On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest").

*Monogram Credit Card Bank*, 297 F.3d 416, 422 (5th Cir. 2002).

ARM easily satisfies these four requirements.

      1.    <u>ARM's Motion for Intervention is Timely.</u>

ARM's motion to intervene is indisputably timely.  Indeed, ARM moved for intervention while this case was still in its infancy: no motions have been filed, no substantive hearings have occurred, no depositions have been taken place, and *Markman* proceedings have not yet commenced.  The Fifth Circuit has repeatedly held that intervention within this time frame is timely.  *E.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) ("'[C]ourts should allow intervention 'where no one would be hurt and greater justice could be attained' . . . [A]bsolute measures of timeliness should be ignored"); *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125-26 (5th Cir. 1970) (holding intervention as of right to be timely when "[a]t the time of the intervention, there had been no legally significant proceedings . . . other than completion of discovery and a pretrial"); *Edwards v. City of Houston*, 78 F.3d 983, 1000-01 (5th Cir. 1996) ("Additionally, that these motions were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation").

Further, no party will be prejudiced by permitting ARM to intervene.  ARM has moved to intervene prior to any significant proceedings in the case.  The timing of ARM's motion will thus cause no prejudice whatsoever to APT, who will have ample time to respond to ARM's pleadings.  Moreover, ARM has begun to collect documents for discovery and has already offered to make its source code available for inspection.

By contrast, ARM is threatened with substantial prejudice if its motion is denied.  If APT is successful in obtaining a declaration from this Court that the products containing the accused ARM Products are infringing, ARM would suffer significant impact to its business.  *See Espy*, 18

F.3d at 1207 (finding prejudice to would-be intervenor where its "economic interests . . . are at stake" and where it would otherwise be denied "the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal"). Accordingly, ARM's motion is timely.

> 2. <u>ARM Has An Interest In The Subject Matter Of This Proceeding.</u>

ARM obviously has a direct and substantial interest in this litigation.  APT has accused numerous ARM cores of infringing its patents.   ARM's ability to honor commitments to its customers are directly threatened by APT's Infringement Contentions and Complaint, which seek a declaration that ARM's processor cores are infringing products, as well as an injunction against products containing those cores.

Moreover, APT effectively concedes that ARM has a substantial interest in this litigation by referencing ARM repeatedly in its Infringement Contentions.  As the Fifth Circuit has observed, the "interest" prong is a means of "'involving as many apparently concerned persons as is compatible with efficiency and due process.'"  *Espy*, 18 F.3d at 1207 (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992)).

ARM's present position is clearly aligned with those situations in which the Supreme Court and the Federal Circuit have found intervention to be appropriate.  *E.g.*, *Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 55 (1935) (holding that manufacturer's intervention in infringement action against its customers is "necessary for the protection of its interest"); *Tegic Commc'ns Corp. v. Bd. of Regents of the Univ. of Tex. Sys.*, 458 F.3d 1335, 1344 (Fed. Cir. 2006) ("[T]o the extent that [interest of the manufacturer] may be impaired by the Texas litigation, [manufacturer] may seek to intervene in that litigation").  Similarly, ARM's position is also aligned with those situations where numerous district courts have deemed intervention appropriate:

> The motion to intervene filed by [a proposed intervenor] will also be granted, because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product. [The proposed intervenor] correctly claims that it has met the test for intervention as of right under Rule 24(a). Its motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known. Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation.

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, 2005 U.S. Dist. LEXIS 22933, at *12-13 (D. Del. May 18, 2005); *see also LG Elecs., Inc. v. Q-Lity Computer, Inc. v. Asustek Computer, Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002) (permitting intervention where plaintiff's "patent infringement contentions" identified intervenor's products sold to existing defendant as the an infringing product).

> [An intervenor] has more than a speculative economic interest, as the products that it sells will be at the heart of the litigation …. As [the intervenor] sells the computers that [the plaintiff] alleges infringe its patents**,** there can be no question that [the intervenor] has a legally protectable interest in the products that [the plaintiff] seeks to place at issue in this patent infringement action.  An applicant demonstrates a significantly protectable interest when the injunctive relief sought by the plaintiffs will have direct, immediate and harmful effects upon its legally protectable interests.

*Id*. at 364-65.

3.    <u>The Court's Decision In This Case May Impair Or Impede ARM's Ability To Protect Its Interests.</u>

Applying the third prong of the intervention-as-of-right test, there is no question that a judgment finding ARM Products as the basis for APT's assertions of infringement "may, as a practical matter, impair or impede" ARM's interest if intervention is not allowed.  *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996).  While formal collateral estoppel and res judicata of

an adverse decision would not apply against ARM, APT would undoubtedly attempt to use such results both in future licensing negotiations and litigation against other ARM licensees, thus severely impairing ARM's ability to license its products without ARM ever having its "fair day in court." *E.g.*, *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st Cir. 1977) (explaining that a "manufacturer must protect its customers . . . in order to avoid the damaging impact of an adverse ruling against its products"); *Heaton*, 297 F.3d at 424 (holding that potential negative *stare decisis* effect is also sufficient).  ARM therefore easily satisfies the third requirement for intervention as of right.  *See LG Elecs.*, 211 F.R.D. at 364-65.

4.     The Other Defendants Cannot Adequately Protect ARM's Interests.

Finally, ARM easily satisfies the "'minimal'" burden of showing "that [its] interest [is] inadequately represented by the existing parties."  *Espy*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  To satisfy the fourth requirement for intervention as of right, ARM merely needs to show that "representation by the existing parties *may* be inadequate." *Heaton*, 297 F.3d at 425 (emphasis added); *see also Trbovich*, 404 U.S. at 538, n.10 ( a proposed intervenor need only establish that "representation of his interest *'may* be' inadequate; and the burden of making that showing should be treated as *minimal*") (emphasis added).

As its Complaint and Infringement Contentions makes clear, APT's interests are squarely adverse to ARM's interests.  Moreover, the necessarily technical information to defend the case is solely in ARM's possession – not that of the Defendants.  *E.g.*, *Bush v. Viterna,* 740 F.2d 350, 357 (5th Cir. 1984) (this prong is met when "it is clear that the applicant will make a more vigorous presentation of arguments than existing parties").

In addition, certain infringement defenses may be available to ARM's products that are not available (or not available to the same degree) to other Defendants.  Selection of non-

infringement and invalidity theories could clearly differ between the various accused products. Absent intervention, ARM would be at the mercy of the present Defendants to present theories favorable to ARM.  Since those theories may, in fact, be unfavorable to the present Defendants, it is clear that "representation by the existing parties *may* be inadequate."  *Heaton*, 297 F.3d at 425 (emphasis added).  Indeed, when different defenses may be available, Federal Circuit precedent requires granting permission to intervene.  *See Israel Bio-Engineering Project v. Amgen, Inc*., 401 F.3d 1299, 1306 (Fed. Cir. 2005) (reversing the district court's denial of a Rule 24 motion to intervene where the intervening party had a defense not available to other defendants).

Additionally, ARM's financial interests are clearly different from the existing parties. For example, at some point in the litigation, one of the Defendants might be forced to make the business decision to settle even though it continues to believe that the accused products do not infringe and/or that the asserted patent claims are invalid or unenforceable.  While such a settlement decision might be rational when considering that Defendant's business, such settlement might be completely irrational when considering ARM's business interests.  Given this indisputable conflict, ARM has the need and right to be heard in its own name.  *E.g.*, *Heaton,* 297 F.3d at 425 ("That the FDIC's interests and Monogram's may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the FDIC's burden on this issue."); *Glickman*, 82 F.3d at 110; *Espy*, 18 F.3d at 1208.

In addition, ARM brings to this litigation knowledge gleaned not only through worldwide experience, but also by way of developing sophisticated cores for many, many years.  ARM's primary business is processor core designs.  Thus, ARM has a unique perspective on the technical nuances of both the ARM Products and the prior art.   Therefore, ARM brings

important expertise to the issues presented.  *See, e.g.*, *Nat'l Farm Lines v. ICC*, 564 F.2d 381,

383 (10th Cir. 1977) (noting relevance "that petitioners in intervention possess experience and

knowledge in a complex area of business which the [existing party] does not have").

Because ARM satisfies all four prongs of the Fifth Circuit test, ARM is entitled to

intervention as of right under Fed. R. Civ. P. 24(a).

### B. In The Alternative, ARM Satisfies All Of The Requirements For Permissive Intervention Under Fed. R. Civ. P. 24(b).

In the alternative, if the Court does not find that ARM is entitled to intervention as of

right, ARM easily satisfies the more liberal standard for permissive intervention.  "Rule 24(b)(2)

provides for permissive intervention when (1) timely application is made by the intervenor, (2)

the intervenor's claim or defense and the main action have a question of law or fact in common,

and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the

original parties."  *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d

185, 189 (5th Cir. 1989).  Notably, this Court has repeatedly granted permissive intervention to

suppliers whose products are at the heart of infringement claims.  *E.g.*, *Reid v. GM Corp.*, 240

F.R.D. 257, 260 (E.D. Tex. 2006) (permitting Microsoft to intervene permissively where its

customer had been sued for patent infringement and had demanded indemnity from Microsoft);

*TiVo Inc. v. AT&T Inc.*, No. 2-09-cv-259 (E.D. Tex. Mar. 31, 2010) (Folsom, J.) (permissive

intervention where infringement claims rested on software provided by Microsoft).

Here, ARM's request is timely, APT's Infringement Contentions depend primarily on

claim construction which would be common to all accused products, and intervention will

conserve judicial resources and allow for the efficient resolution of all related issues in a single

proceeding rather than forcing ARM to defend itself in an apparently never-ending set of APT

attempts to litigation against ARM by proxy.  In addition, intervention will neither cause undue

delay nor prejudice the rights of either APT or the other defendants.  Accordingly, while ARM is

plainly entitled to intervention as of right, ARM also satisfies the requirements for permissive

intervention under Fed. R. Civ. P. 24(b).

**C.**     **ARM's Intervention Is Precisely The Action That The Federal Circuit Recommends Under The Present Circumstances.**

The Federal Circuit specifically identified participation in an existing lawsuit as one

method for a party to address allegations of infringement against its products and indemnitees:

> [Defendant] also contends that it could be required to indemnify an entity
> that potentially could be held liable in a different case for infringing the
> [asserted] patent. If [Defendant's] interests are affected by a different suit
> regarding the [asserted] patent, then [Defendant] should join that action as
> a party, for example, pursuant to Federal Rule of Civil Procedure
> 19(a)(2)(i).

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir.

2001).

The difference between the Federal Circuit's Rule 19 suggestion and ARM's present

Rule 24 motion is merely one of labeling, not substance.  In the Fifth Circuit, such labels are

meaningless:

> For starters, a court is not bound by how a party labels its motion.
> Obviously, "the relief sought, that to be granted, or within the power of the
> court to grant, should be determined by substance, not a label".  As noted,
> this principle is more than well established. In this regard, courts have
> applied intervention or joinder standards to motions to amend when
> plaintiffs have sought, by that means, to add claims of additional parties.

*Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003) (internal

citations omitted).  If anything, the substantive burden is less for a Rule 24 movant than a Rule

19 movant.[4]  Additionally, the inclusion of ARM in this litigation does not implicate any of the

---

[4] Rule 24 permits non-parties to protect their interests while Rule 19 exists largely to give those
parties actually named in a lawsuit a potential defense if they can meet their burden of
establishing that a party, which has not been sued, is indispensable, thereby making its joinder

service, jurisdiction, or venue limitations of Rule 19.

Moreover, as in *Intellectual Property Development* cited above, ARM could be required to indemnify a party to the present litigation.  Thus, this Court should permit ARM's attempt to comply with the course of action recommended by the Federal Circuit whether labeled as intervention under Rule 24 or joinder under Rules 19 and/or 20.

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, ARM respectfully requests that the Court grant ARM's Motion to Intervene and (1) allow ARM to intervene as of right pursuant to Fed. R. Civ. P. 24(a); or (2) in the alternative, grant ARM permissive intervention pursuant to Fed. R. Civ. P. 24(b) in the above-captioned cases.

---

necessary.  See 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1609 (3d ed. 2001).

Respectfully submitted,

Dated:  July 23, 2012

By:  */s/ Michael C. Smith*
Michael C. Smith
State Bar No. 18650410
michaelsmith@siebman.com
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 E. Austin St.
Marshall, Texas 75670
(903) 938-8900 (office)
(972) 767-4620 (fax)

Kevin P. Anderson
WILEY REIN LLP
1776 K St NW
Washington DC 20006
(202) 719-7000 (office)
(202) 719-7049 (fax)

*Counsel for Defendants-Intervenors ARM Ltd. and ARM, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that Kevin Anderson, counsel for Intervenor ARM, conferred by e-mail on June 18, 2012, with David Farnum, counsel for Plaintiff, concerning the relief sought in this motion and David Farnum stated that Plaintiff was not opposed.

*/s/ Michael Smith*
Michael Smith

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are

being served with a copy of this document via the Court's EM/ECF system per Local Rule CV-

5(a)(3) on this 23rd day of July 2012.

*/s/ Michael Smith*
Michael Smith
